[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
December 16, 2005
THOMAS  K. KAHN
CLERK

No. 05-11847
Non-Argument Calendar

_____

Agency Nos. A95-886-023
& A95-886-024

JORGE ALONSO SANCHEZ-ZAPATA,
BLANCA MARGARITA MEJIA,

                                                                    Petitioners,

versus

U.S. ATTORNEY GENERAL,

                                                                    Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(December 16, 2005)

Before TJOFLAT, CARNES and WILSON, Circuit Judges.

PER CURIAM:

Jorge Alonso Sanchez-Zapata petitions for review of the Board of Immigration Appeals' order adopting and affirming the immigration judge's decision to deny him asylum, withholding of removal under the Immigration and Nationality Act, and protection under the United Nations Convention Against Torture ("CAT relief").[1] We dismiss the petition in part and deny in part.

Zapata, a native and citizen of Columbia, contends that he is entitled to asylum, withholding of removal, and CAT relief because he has been persecuted in Columbia by the National Liberation Army (ELN) as a result of his political opinion and membership in a community action group. The government contends that we lack jurisdiction to hear Zapata's claims for asylum because the IJ determined that his application was untimely and no extraordinary circumstances justified the untimely filing. The government also contends that we lack jurisdiction to hear Zapata's CAT relief and withholding of removal claims because Zapata failed to exhaust his administrative remedies.

## I.

We review subject matter jurisdiction de novo. Gonzalez-Oropeza v. U.S. Att'y Gen., 321 F.3d 1331, 1332 (11th Cir. 2003). As we explained in Balogun v.

---

[1] Zapata's wife, Blanca Margarita Mejia, was also ordered removed, but she is not mentioned as a petitioner in Zapata's initial brief. Nonetheless, because the government concedes that her application for asylum is derivative of her husband's, our discussion of and ruling on Zapata's claims also apply to his wife's petition.

U. S. Attorney General, 425 F.3d 1356 (11th Cir. 2005), the REAL ID Act broadened the jurisdiction of the courts of appeals when we review final orders of removal that involve constitutional claims or questions of law. Id. at 1359–60; see also Real ID Act § 106(a)(1)(A)(iii), codified at 8 U.S.C. § 1252(a)(2)(D). We have also recognized, however, that "[t]he timeliness of an asylum application is not a constitutional claim or question of law covered by the Real ID Act's changes." Chacon-Botero v. U. S. Att'y Gen., 427 F.3d 954, 957 (11th Cir. 2005).

Because the BIA adopted the IJ's decision, we review only the IJ's decision. Chacon-Botero, 427 F.3d at 956 ("When the BIA issues a decision, we review only that decision, except to the extent that the BIA expressly adopts the IJ's decision.") (quoting Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001)) (quotation marks omitted). The IJ determined that Zapata's asylum application was untimely, and so we have no jurisdiction to review that decision. See id. at 957.

An alien has timely filed for asylum if he "demonstrates by clear and convincing evidence that the application has been filed within 1 year after the date of the alien's arrival in the United States." 8 U.S.C. § 1158(a)(2)(B). An application filed after one year also may be considered despite its untimeliness "if the alien demonstrates to the satisfaction of the Attorney General either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing

3

an application within the period specified . . . ." Id. § 1158(a)(2)(D). Nevertheless, section 1158(a)(3) provides, "No court shall have jurisdiction to review any determination of the Attorney General under paragraph (2)." Id. § 1158(a)(3); see also Chacon-Botero, 427 F.3d at 954; Fahim v. U.S. Att'y Gen., 278 F.3d 1216, 1217–18 (11th Cir. 2002).

The IJ made a factual determination that Zapata's application was untimely and determined that he had failed to establish changed or extraordinary circumstances that excused the untimely application. These determinations did not involve any constitutional claims or questions of law. Therefore, we have no jurisdiction to hear Zapata's asylum claim and dismiss his petition in this respect. See Chacon-Botero, 427 F.3d at 954.

## II.

We may review a final order of removal only if an alien has exhausted all available administrative remedies. See 8 U.S.C. § 1252(d)(1); Sundar v. INS, 328 F.3d 1320, 1323 (11th Cir. 2003). "We have interpreted that requirement to be jurisdictional, so we lack jurisdiction to consider claims that have not been raised before the BIA." Id. (citations omitted).

We conclude that we have no jurisdiction to hear Zapata's CAT relief claim, but we do have jurisdiction to consider his withholding of removal claim. Zapata made no reference to CAT relief in his brief before the BIA. Therefore, he failed to

4

exhaust his administrative remedies with respect to CAT relief. Accordingly, we lack jurisdiction to hear his CAT relief claims on appeal, and dismiss his petition in that regard. See Bayro v. Reno, 142 F.3d 1377, 1379 (11th Cir. 1998) (holding that if the BIA summarily dismisses a petitioner's appeal because he did not address the disputed issue in his brief, then the petitioner has not perfected his appeal to the BIA and has not exhausted his administrative remedies); see also Fenandez-Bernal v. U.S. Att'y Gen., 257 F.3d 1304, 1317 n.13 (11th Cir. 2001) (stating that failure to raise an issue before the BIA results in this Court's lack of jurisdiction over that issue); Asencio v. INS, 37 F.3d 614, 615–16 (11th Cir. 1994) (noting that if a claim has not been first presented to the BIA, this Court lacks jurisdiction over that claim).

In his brief before the BIA, however, Zapata did argue that the IJ erred in finding that Zapata failed to meet his burden of proof regarding persecution. His brief before the BIA also set forth the relevant law with respect to withholding of removal and noted that withholding of removal requires a higher burden of proof than asylum. We conclude that Zapata exhausted his administrative remedies with respect to the withholding of removal issue, and so we have jurisdiction to consider this aspect of his petition for review.

## III.

To the extent that the IJ's decision not to withhold Zapata's removal was based on a legal determination, our review is de novo. Mohammed v. Ashcroft, 261 F.3d 1244, 1247–48 (11th Cir. 2001). The IJ's factual determinations are reviewed under the substantial evidence test, and we "must affirm the [IJ's] decision if it is 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" Al Najjar, 257 F.3d at 1284 (citation omitted). The substantial evidence test is "deferential" and does not allow us to "re-weigh the evidence from scratch." Mazariegos v. U.S. Att'y Gen., 241 F.3d 1320, 1323 (11th Cir. 2001) (quotation marks omitted). "To reverse the IJ's fact findings, we must find that the record not only supports reversal, but compels it." Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003) (citation omitted).

"An alien seeking withholding of removal under the INA must show that his life or freedom would be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion." Mendoza, 327 F.3d at 1287 (citing 8 U.S.C. § 1231(b)(3)(A)). "An alien bears the burden of demonstrating that he more-likely-than-not would be persecuted or tortured upon his return to the country in question." Id.; see also 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 208.16(b). Although neither the INA nor the regulations define "persecution," we have recognized other circuits' holdings that "persecution is an

6

extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation, and that mere harassment does not amount to persecution." Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1231 (11th Cir. 2005) (internal quotations omitted); Gonzales v. Reno, 212 F.3d 1338, 1355 (11th Cir. 2000).

An alien's testimony, if credible, may be sufficient without corroboration to sustain the burden of proof for withholding of removal. 8 C.F.R. § 208.16(b). In an adverse credibility determination, however, when the IJ enumerates an applicant's inconsistencies and the record supports these findings, we will not substitute our judgment for the IJ's credibility findings. D-Muhumed v. U.S. Att'y Gen., 388 F.3d 814, 819 (11th Cir. 2004). Substantial evidence in the present case supports the IJ's adverse credibility determinations and the subsequent decision that Zapata was not entitled to withholding of removal under the INA.

The IJ noted inconsistencies in Zapata's testimony. For example, Zapata testified that he was a member of the Community Action Board (CAB) of Barbosa. After Zapata described the CAB's function and structure, the IJ asked Zapata to explain his involvement with the CAB, and Zapata replied that he was not actually a member of the CAB but was a member of a community action group.

Zapata also testified that in February 1998 while he and his wife were working at the store they owned, they heard loud noises that sounded like gunshots, and they dropped to the floor, fearing for their lives. Later, a neighbor told Zapata

7

that two people had come by on a motorcycle and had shot at the store. Zapata reported this incident to the authorities, but the persons responsible were never apprehended. Zapata testified that he moved around from place to place in Colombia after the incident at his store occurred, but his asylum application indicates that he lived at the same address in Medellin, Columbia from 1989 to 1999.

Zapata had only one face-to-face encounter with ELN at a community meeting in La Chorrera in February 1998, and he was not harmed during his encounter. He did not report this incident to the authorities. Although he testified that he received threatening phone calls from ELN, Zapata provided sparse details concerning these calls. The IJ concluded that, overall, Zapata's testimony was vague, general, and lacking in specific details.

The incidents Zapata testified about are best characterized as harassment and intimidation, and do not rise to the level of persecution. See Sepulveda , 401 F.3d at 1231. Moreover, his testimony and the evidence do not show that the assault on his store occurred because of political opinion. See Elias-Zacarias, 502 U.S. at 483, 112 S. Ct. at 816 (requiring a petitioner to show that he was persecuted because of his political opinion). Although the record demonstrates that Zapata was active in political campaigns, it does not establish that he was persecuted because of his political opinion.

In denying Zapata's request for withholding of removal, the IJ provided specific, cogent reasons for his adverse credibility determination, and the record supports the IJ's findings. Zapata has failed to demonstrate that it is "more-likely-than-not [that he] would be persecuted or tortured" if returned to Columbia. Mendoza, 327 F.3d at 1287. Therefore, we affirm the IJ's denial of Zapata's petition with respect to withholding of removal.

PETITION DISMISSED IN PART AND DENIED IN PART.