[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

Nos. 04-12507, 04-14496

_____

**FILED**
**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**September 26, 2005**
**THOMAS K. KAHN**
**CLERK**

Agency No. A11-850-952

PETER BALOGUN,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petitions for Review of Decisions of the
Board of Immigration Appeals

_____

**(September 26, 2005)**

Before BIRCH, CARNES and FAY, Circuit Judges.

CARNES, Circuit Judge:

Peter Balogun petitions for review of the Board of Immigration Appeals'

order affirming the immigration judge's decision to deny him relief from removal,

and for review of the BIA's order refusing to reopen his removal proceedings. We deny the petitions.

## I.

Balogun, a citizen of Nigeria, entered the United States in 1960 as a student and his status was later adjusted to lawful permanent resident. In 1988 Balogun was convicted in federal district court in Alabama on one count of embezzling and one count of conspiring to embezzle more than $10,000 from the United States government. He was sentenced to fifteen months in federal prison on each count, to be served concurrently.

In 1997 the state of Alabama granted Balogun's request for a pardon. The pardon restored some of Balogun's civil and political rights and withheld others. Specifically excluded from the pardon was the right to own or possess a firearm. The pardon also stated that Balogun would be subject to the state's habitual offender act if he committed subsequent crimes.

At some point between 1997 and 2002, Balogun left the country. He returned on October 28, 2002, seeking to be admitted to the United States as a returning resident. The Immigration and Naturalization Service charged Balogun with removability because, as an alien who had committed a crime of moral turpitude, he was "inadmissible" or "ineligible to be admitted to the United States."

See 8 U.S.C. § 1182(a)(2)(A)(i)(I).

Balogun conceded that he was removable but argued that his "inadmissible" status should be waived for three reasons: (1) the crime he committed occurred more than fifteen years before his application for admission to the United States; (2) his four children are United States citizens who would suffer extreme hardship were he not admitted; and (3) he had been pardoned for his crime. The IJ rejected each of those stated grounds.

The IJ concluded that the fifteen-year-waiver provision, id. § 1182(h)(1)(A)(i), and the children-citizen-waiver provision, id. § 1182(h)(1)(B), were inapplicable to Balogun. Those provisions do not permit a waiver of inadmissibility if "an alien who has previously been admitted to the United States as an alien lawfully admitted for permanent residence" has "since the date of such admission . . . been convicted of an aggravated felony." Id. § 1182(h). The IJ found that Balogun's embezzlement convictions were aggravated felonies for the purposes of § 1182(h). In addition, the IJ held that Balogun's pardon was not "full and unconditional" as required by the pardon-waiver provision. Id. § 1227(a)(2)(A)(v). The pardon restricted Balogun's right to own and possess a firearm and stated that his conviction was subject to the habitual offender act.

The BIA affirmed the IJ's decision and adopted his reasoning as its own.

3

Balogun petitioned this Court to review the BIA's order affirming the IJ's decision to deny him relief from removal.

Shortly after Balogun petitioned this Court for review, he filed a motion with the BIA to reopen his removal proceedings based on new facts not available at the time of the original decision. See 8 C.F.R. § 1003.2(c)(1). Seven days after Balogun received the BIA's order affirming the IJ's decision, he received a pardon from the state of Alabama restoring without exception all the state civil and political rights that he had lost as a result of his federal embezzlement convictions. Balogun asserted in his motion to reopen that, because this new pardon was now "full and unconditional," he was entitled to have his inadmissible status waived under 8 U.S.C. § 1227(a)(2)(A)(v).

The BIA denied the motion to reopen. It held that the new pardon was not "full and unconditional" as required by § 1227(a)(2)(A)(v). The BIA explained that the pardon did not release Balogun from "all legal consequences flowing from his federal criminal convictions," specifically those consequences imposed under federal, rather than state, law. Balogun petitioned this Court to review the BIA's order on his motion to reopen, as well.

We have consolidated Balogun's petitions for the purposes of this appeal.

**II.**

4

Regarding his initial petition for review of the BIA's final order of removal, Balogun contends that he did not commit an "aggravated felony" disqualifying him from having his "inadmissible" status waived. A felony is only "aggravated" under the statute, Balogun says, when it is committed against a person or corporate entity. Crimes committed against the United States, on the other hand, cannot be aggravated felonies, because the United States is not considered a "victim" under the statute. We do not agree.

An alien may not enter the United States if he has committed a crime of moral turpitude. 8 U.S.C. § 1182(a)(2)(A)(i)(I). The alien's inadmissible status may be waived at the discretion of the Attorney General if "the activities for which the alien is inadmissible occurred more than 15 years before the date of the alien's application for . . . admission." Id. § 1182(h)(1)(A)(i). The alien's inadmissible status may also be waived by the Attorney General if the alien is a "parent . . . of a citizen of the United States" and the "denial of admission would result in extreme hardship to the United States citizen . . . son, or daughter." Id. § 1182(h)(1)(B). The Attorney General, however, lacks discretion to waive an alien's inadmissible status if the alien committed an "aggravated felony" during a time when he was previously in the United States as a lawful permanent resident. Id. § 1182(h).

The BIA, adopting the IJ's decision, found that because Balogun's

5

embezzlement convictions were aggravated felonies the Attorney General had no discretion to waive Balogun's inadmissible status. As a result, the BIA concluded that Balogun remained inadmissible and was due to be removed from the United States.

Before May 11, 2005, our review of this decision would have been limited. Section 1252(a)(2)(c) of the immigration statutes provides that "no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section 1182(a)(2)." 8 U.S.C. § 1252(a)(2)(c). (Balogun committed a criminal offense covered in section 1182(a)(2), i.e., a crime of moral turpitude. See id. § 1182(a)(2)(A)(i)(I).) We had held that, where a final order of removal may be subject to the jurisdictional restraints of section 1252(a)(2)(c), our review is limited to determining whether the petitioner is (1) an alien (2) who was removable (3) for committing a crime enumerated in one of the statutes listed in section 1252(a)(2)(c). Galindo-Del Valle v. Attorney Gen., 213 F.3d 594, 598 (11th Cir. 2000) (per curiam). If all three of those conditions exist, and there are no constitutional defects in the alien's removal proceedings, we must dismiss the petition for want of jurisdiction. Id. That is the framework that would have applied here. Balogun has conceded that he is an alien, that he is removable, and

6

that he committed a crime of moral turpitude.  He has not claimed that he was deprived of a constitutional right.  Balogun's question of law about whether the BIA erred in determining that his embezzlement convictions were aggravated felonies would have been beyond the scope of our jurisdiction.

That all changed on May 11, 2005 when the President signed into law the Emergency Supplemental Appropriations Act for Defense, the Global War on Terror, and Tsunami Relief, Pub. L. No. 109-13, 119 Stat. 310 (2005).  That appropriations act contains an unrelated, but important, division titled the "REAL ID Act."  One of the provisions in the REAL ID Act loosened the jurisdictional restraints of section 1252(a)(2)(c).  It has the effect of restoring some of our jurisdiction to decide the  "questions of law" an alien raises in a petition to review a final order of removal.  Specifically, the REAL ID Act provides:

> Nothing in [section 1252(a)(2)(c)], or in any other provision of this Act (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section.

Real ID Act § 106(a)(1)(A)(iii), codified at 8 U.S.C. §1252(a)(2)(D).

Congress explained that it added section 106(a)(1)(A)(iii) to "eliminate the problems of bifurcated and piecemeal litigation."  151 Cong. Rec. H2813 (conference report for Emergency Supplemental Appropriations Act).  As we

7

explained above, before May 11, 2005, we were without jurisdiction to review questions of law raised in an alien's petition for review where the alien committed a crime enumerated in one of statutes listed in 8 U.S.C. § 1252(a)(2)(c). To get around this jurisdictional bar, aliens would petition a federal district court for a writ of habeas corpus under 28 U.S.C. § 2241(a) to get some review of the purported legal error in the BIA's removal order. The Supreme Court said in Immigration & Naturalization Serv. v. St. Cyr, 533 U.S. 289, 121 S. Ct. 2271 (2001), that habeas review of the BIA's alleged error was not precluded by the jurisdiction stripping statute in 8 U.S.C. § 1252(a)(2)(c).

In effect, the St. Cyr decision gave aliens who had committed crimes "more judicial review than non-criminals." 151 Cong. Rec. H2813. In other words, aliens who had not committed crimes only had one opportunity to appeal the final removal order of the BIA, but aliens who had committed a crime listed in one of the enumerated statutes in section 1252(a)(2)(c) had two opportunities—first a petition for review to the courts of appeals on the final order of removal, and then a petition for habeas corpus under 28 U.S.C. § 2241(a) to the federal district court. Congress found that this double-layered review for criminal aliens prolonged and complicated the removal process. See 151 Cong. Rec. H2813.

Section 106(a)(1)(A)(iii) of the REAL ID Act replaces the two levels of

review with one. A criminal alien now must petition the court of appeals for review of all claimed legal errors relating to the BIA's final order of removal. The Act accomplished this by restoring the courts of appeals' jurisdiction to review all legal errors in a removal order for criminal aliens. Habeas review became unnecessary. The provisions of 28 U.S.C. § 2241(a) no longer play any role in immigration cases. See 151 Cong. Rec. H2813 ("By placing all review in the courts of appeals, Division B [i.e., the Real ID Act] would provide an 'adequate and effective' alternative to habeas corpus."). These jurisdiction restructuring provisions are retroactively applicable to all pending proceedings regardless of the date of the final administrative order. The REAL ID Act § 106(b); Fernandez-Ruiz v. Gonzales, 410 F.3d 585, 587 (9th Cir. 2005).

Our conclusion that we have jurisdiction to decide in a petition for review proceeding whether the BIA erred in determining that a petitioner's conviction is an aggravated felony within the meaning of 8 U.S.C. § 1182(h) is consistent with that of every other court of appeals that has addressed the issue. See Popal v. Gonzales, 416 F.3d 249, 251–52 (3d Cir. 2005); Elia v. Gonzales, 418 F.3d 667, 671 (6th Cir. 2005); Gattem v. Gonzales, 412 F.3d 758, 762-63 (7th Cir. 2005); Lopez v. Gonzales, 417 F.3d 934, 936 (8th Cir. 2005); Fernandez-Ruiz v. Gonzales, 410 F.3d 585, 587 (9th Cir. 2005). We turn now to the specific question

of whether Balogun's embezzlement conviction is an aggravated felony for §

1182(h) purposes.

An alien commits an "aggravated felony" if his offense "involves fraud or

deceit in which the loss to the victim or victims exceeds $10,000."  8 U.S.C. §

1101(a)(43)(M)(i).  Balogun concedes that his embezzlement conviction involved a

fraud of more than $10,000.  He argues, however, that because he defrauded the

United States government, rather than a "person," his embezzlement conviction did

not involve a victim.  If they did not, Balogun reasons, he could not have

committed an "aggravated felony" as defined by the immigration statutes.

As support, Balogun points to 8 U.S.C. § 1101(a)(43)(M)(ii), the provision

immediately following the definition of "aggravated felony."  That provision

specifies that an alien commits an "aggravated felony" if he was convicted of tax

evasion that resulted in a loss to the United States government of more than

$10,000.  Id.  Balogun's point is that Congress specifically referred to the United

States government as a victim in subparagraph (ii) of its definition of "aggravated

felony," but in subparagraph (i) referred only to  "victims" generally.  From that he

would have us infer that the United States government is not included in "victim"

as that term is used in subparagraph (i) of section 1101(a)(43)(M).

Balogun's argument ignores the obvious point that it would not have made

10

any sense for Congress to use the broader term "victim," which includes individuals and corporate entities, in subparagraph (ii); only the government can be victimized by tax evasion which is all that subparagraph (ii) addresses. In contrast, the victims of fraud or deceit generally, which is what subparagraph (i) addresses, can include an individual, a corporate entity, or the government. That is why Congress used the inclusive term "victim" in subparagraph (i) while it specified the government as the victim in subparagraph (ii). If Congress had wanted to limit the definition of "aggravated felony" to crimes in which the victims were persons and corporate entities, as Balogun suggests, it could have used the term "persons" in section 1101(a)(43)(M)(i). Instead, Congress used the broader term "victim."

This interpretation comports with the way courts have interpreted the term "victim" in other statutory contexts. The Second Circuit has held that the Internal Revenue Service can be a "victim" for restitution purposes under the Victim and Witness Protection Act, 18 U.S.C. § 3663. See United States v. Helmsley, 941 F.2d 71, 101-02 (2d Cir. 1991) (listing cases where government agencies have been found to be victims). The same court has held that, under the Mandatory Victims' Restitution Act, the government is a victim entitled to restitution for embezzlement (the same crime for which Balogun was convicted). See United States v. Ekanem, 383 F.3d 40, 43–44 (2d Cir. 2004). Likewise, the Ninth Circuit

11

has held that the Postal Service was a "victim" entitled to restitution under the same act. See United States v. De La Fuente, 353 F.3d 766, 773–74 (9th Cir. 2003).

In this case the BIA interpreted "victim" in 8 U.S.C. § 1101(a)(43)(M)(i) to include the government, and its interpretations of immigration statutes are due Chevron deference where appropriate. Farquharson v. U.S. Attorney Gen., 246 F.3d 1317, 1320 (11th Cir. 2001); Perlera-Escobar v. Executive Office for Immigration, 894 F.2d 1292, 1296 (11th Cir. 1990) ("We are also obliged . . . to defer to the BIA's interpretation of the applicable statute if that interpretation is reasonable." (citing Chevron v. Natural Res. Def. Council, 467 U.S. 837, 104 S. Ct. 2778 (1984)). Giving Balogun's argument the benefit of the doubt, the most that can be said is that the term "victim" in § 1101(a)(43)(M)(i) is ambiguous. The BIA's interpretation of it to include the government is reasonable.

Given that conclusion and Balogun's concession that his embezzlement conviction involved a fraud of more than $10,000, it follows that his conviction was for an aggravated felony within the meaning of 8 U.S.C. § 1101(a)(43)(M)(i). As a result, Balogun is not entitled to a waiver of his inadmissible status under 8 U.S.C. § 1182(h). The BIA's order of removal is valid, and Balogun's petition for review of that order is due to be denied.

12

## III.

The other issue Balogun raises concerns his petition for review of the BIA's order declining to reopen his removal proceedings. Balogun contends that his motion to reopen should have been granted because, six days after the BIA issued its final order of removal, the state of Alabama granted him an unconditional pardon—as opposed to the limited pardon he had previously received—for his federal embezzlement convictions.

The BIA is permitted to reopen removal proceedings if the alien, within ninety days of the final order of removal, presents new evidence that "is material and was not available and could not have been discovered or presented at the former hearing." 8 C.F.R. § 1003.2(c)(1). Balogun's motion to reopen the removal proceedings was timely filed and he did present new evidence which was not available at his former hearing. The question is whether this new evidence is material to the BIA's final order of removal.

Balogun argues that he is entitled to a waiver of his inadmissible status under 8 U.S.C. § 1227(a)(2)(A)(v) because he "has been granted a full and unconditional pardon . . . by the Governor of any of the several States." The government responds that Balogun's new pardon is not "full and unconditional" because, while all his civil and political rights under state law were restored, he is

13

still subject to the federal consequences of his federal embezzlement convictions (for example, federal felon in possession laws and federal habitual offender laws). Although we are inclined to agree with the BIA, we need not decide what Congress intended by "full and unconditional pardon" because Balogun is ineligible for the pardon-waiver provision of section 1227(a)(2)(A)(v) in any event.

An alien is to be deported if he is convicted, while in the United States, of the crimes listed in section 1227(a)(2)(A)(i) through (iv). Section 1227(a)(2)(A)(v) provides that subparagraphs (i) through (iv) "shall not apply" if an alien who has been convicted of one of the listed crimes has been pardoned by the president or a governor of a state. Notably, section 1227(a)(2)(A) governs only those aliens who are deportable.

Balogun is not a deportable alien. He is an inadmissible alien under section 1182(a)(2)(A)(i)(I), a wholly different provision authorizing his removal. This separate classification of inadmissibility applies to those aliens who, for one reason or another, are ineligible to enter or re-enter the United States in the first place. See 8 U.S.C. § 1182(a). (This ineligibility to enter the country contrasts with the situation of deportable aliens who are either (1) eligible to enter when they arrive and are admitted, but become ineligible to remain because of some later event, or (2) those who were admitted, but would not have been had their inadmissible status

14

been known at the time of admission.)  See id. § 1227(a)).

Section 1182 does not have a pardon provision like section 1227 does, and we believe that if Congress had intended to extend the pardon waiver to inadmissible aliens, it would have done so.  "[I]t is generally presumed that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another."  BFP v. Resolution Trust Corp., 511 U.S. 531, 537, 114 S.Ct. 1757, 1761, (1994) (citation and quotation marks omitted); accord In re Griffith, 206 F.3d 1389, 1394 (11th Cir. 2000) (en banc) (noting that "[w]here Congress knows how to say something but chooses not to, its silence is controlling") (alteration in original) (quotation marks omitted).  Thus, even assuming that Balogun's pardon meets the requirements of §1227(a)(2)(A)(v), he would still be unable to enter the United States; he would still be removable.

## IV.

We deny Balogun's petition for review of the BIA's final order of removal and his petition for review of the BIA's order deny his motion to reopen his removal proceedings.

PETITIONS DENIED.