[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 2, 2006
THOMAS K. KAHN
CLERK

No. 05-13826
Non-Argument Calendar
_____

BIA No. A28-654-740

OLUWATOYIN UTOH,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

**(May 2, 2006)**

Before TJOFLAT, BIRCH and CARNES, Circuit Judges.

PER CURIAM:

Oluwatoyin Utoh, a native of Nigeria, has petitioned for review of the final

order of the Board of Immigration Appeals ("BIA"), which adopted the decision of

the immigration judge ("IJ"), ordering deportation and denial of voluntary

departure under former § 241(a)(4) of the Immigration and Nationality Act

("INA").[1]  Specifically, Utoh challenges the IJ's denial of her application for

suspension of deportation pursuant to 8 U.S.C. § 1254 (repealed 1996).[2]  Because

Utoh raises a question of law – whether, under the facts of this case, she can

establish good moral character for purposes of eligibility for suspension of

deportation – we have jurisdiction over her petition for review.  Because she

cannot establish good moral character during the statutory ten-year period, we

DENY her petition.

## I. BACKGROUND

According to the record of administrative proceedings before the INS,[3] Utoh

claims that she entered the United States with a non-immigrant visa in 1978.

Administrative Record ("AR") at 105.  In 1989, the INS issued an order to show

---

[1]This section, 8 U.S.C. § 1251(a)(4)(1988), later became 8 U.S.C. § 1251(a)(2) (1994).  In 1996 it was transferred to 8 U.S.C. § 1227.

[2]Section 308(b)(7) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009 (1996) ("IIRIRA"), repealed § 1254.

[3] On 25 November 2002, President Bush signed into law the Homeland Security Act of 2002 ("HSA"), Pub. L. No. 107-296, 116 Stat. 2135.  The HSA created a new Department of Homeland Security ("DHS"), abolished the INS, and transferred its functions to the new department.  Because this case was initiated while the INS was still in existence, this opinion refers to the agency as the INS rather than the DHS.

cause ("OSC") charging Utoh with deportability, pursuant to INA § 241(a)(4), because she had been convicted of two crimes involving moral turpitude ("CIMT") not arising out of a single scheme of criminal misconduct: on 5 October 1988 she had been convicted of one count of forgery (2nd degree) and three counts of financial transaction card theft, in violation of §§ 16-9-2, and 16-9-31 of the Official Code of Georgia. Id. at 257, 262-63.

In November 1989, the INS filed additional charges of deportability on the grounds that, on 5 May 1989, Utoh had been convicted of filing a false passport application, in violation of 18 U.S.C. § 1542. Id. at 254; 230-47. The indictment alleged that Utoh had committed the offense on 11 December 1987. Id. at 233. In March 1990, the deportation proceedings against Utoh were administratively closed so that she could pursue amnesty. Id. at 258. In denying a request for reduction in the amount of her bond, however, the BIA noted that, "[Utoh] has four convictions for crimes of moral turpitude, and an arrest warrant for passport fraud. All of these crimes reflect adversely upon her character and indicate her disrespect for the laws of the United States." Id. at 229.

In August 1998, over eight years later, Utoh received a notice to appear ("NTA") to show why she should not be removed from the United States.[4] Id. at

---

[4] After passage of the IIRIRA, deportable and inadmissible aliens are subject to a single form of removal proceedings under 8 U.S.C. § 1229a. The IIRIRA re-termed deportation and exclusion "removal," and called the written notice initiating proceedings (formerly an OSC) a

317-19. At a deportation hearing on 9 January 1999, Utoh conceded deportability as charged in the OSC, based on her admission that the state convictions were for CIMTs. Id. at 132; see also id. at 276-77. In her brief in support of eligibility for relief, Utoh admitted that she had been convicted, in May 1989, for filing a false passport application in 1987. Id. at 278. She argued that, despite her May 1989 CIMT conviction, she had not actually committed any offenses during the ten years following the 1988 CIMT convictions that had rendered her deportable, thereby establishing good moral character and making her eligible for suspension of deportation under 8 U.S.C. § 1254. Utoh also moved to designate France as her country for deportation.

At a continuation of the hearing, the IJ rejected Utoh's request for voluntary departure, found her deportable, and ordered her deported to France, and if not accepted there, to Nigeria. Id. at 65-66. Utoh appealed. Before the BIA, the INS argued that Utoh was statutorily ineligible for suspension of deportation because she had conceded deportability and fewer than ten years had elapsed between her 1988 CIMT convictions and the filing of the additional charges of deportability in 1989. Id. at 29. The INS made this argument based upon the BIA's ruling in In re

---

Notice to Appear ("NTA"). See IIRIRA § 308(b)(6) (striking 8 U.S.C. § 1252b(a)(1)); IIRIRA § 304(a)(3) (adding 8 U.S.C. §§ 1229, 1229a)). Due to complications related to these changes in terminology, the 1998 NTA in this case was eventually withdrawn and the case proceeded pursuant to the January 1989 OSC for deportability.

4

Lozada, 19 I & N Dec. 637 (BIA 1988) – that the ten year period required for suspension of deportation is measured from the date of conviction rather than from the date of commission of the offense rendering the alien deportable – and the "stop time" rule established by 8 U.S.C. § 1229b(d)(1).[5] The BIA affirmed the IJ's decision without opinion. Id. at 7.

This appeal arises out of Utoh's 2003 petition for habeas relief, pursuant to 28 U.S.C. § 2241.[6] In that petition, Utoh argued that (1) the BIA rule announced in Lozada is inapplicable to her case; and (2) neither Congress nor the BIA, in interpreting 8 U.S.C. § 1229b(d)(1) in In re Nolasco-Tofino, 22 I. & N. Dec. 632, 641 (BIA 1999), intended for the "stop time" rule established thereby to apply to a case such as hers, where "eligibility depends upon the accumulation if a certain period of residence after an otherwise disqualifying event." Habeas Petition at 11.

In April 2005, a magistrate judge entered a final report and recommendation that relief be denied. The magistrate judge concluded that the IJ had correctly found that, because Utoh "was convicted of passport fraud [a CIMT] during the at

---

[5]Under the "stop-time" rule, service of an NTA or OSC for removal proceedings "stops time" or ends an alien's period of residence or continuous physical presence in the United States, for purposes of an application for suspension of deportation. See Tefel v. Reno, 180 F.3d 1286, 1288-90 (11th Cir. 1999) (explaining the history and application of the "stop-time" rule).

[6]We dismissed as untimely Utoh's original petition for review because she filed it thirty-one days after the BIA's decision. See Utoh v. United States Att'y Gen., No. 02-16006 (11th Cir. 2002) (order dismissing petition). We denied her petition for reconsideration. Id. (order denying petition for reconsideration).

5

least ten-year 'continuous period' beginning in October 1988," she could not prove that she was a person of good moral character. Report & Recommendation at 6-7. The report and recommendation also stated that Utoh's "stop-time" rule argument was irrelevant because the IJ had not relied upon the rule in denying her application for suspension of deportation. Id. at 6. Utoh filed objections in which she argued that common sense dictated that good moral character should depend on her behavior during the statutory period, rather than on any prior behavior later resulting in a conviction. Petitioner's Objections at 3. Utoh did not object to the magistrate judge's determination that the "stop-time" rule issue was irrelevant. Because Congress had, in the meantime, enacted the REAL ID Act, § 106(c) of which directed that all habeas petitions be treated as petitions for review and ruled on by federal appellate courts, the district court pretermitted review of Utoh's petition and transferred the matter to us.[7]

## II. DISCUSSION

A. Jurisdiction

We are "obligated to inquire into subject-matter jurisdiction sua sponte whenever it may be lacking." Chacon-Botero v. U.S. Att'y Gen., 427 F.3d 954, 956 (11th Cir. 2005) (per curiam). "We review questions of subject matter

---

[7]Prior to the transfer, the district court granted a motion for stay of deportation through its final decision on the habeas petition.

jurisdiction de novo." Brooks v. Ashcroft, 283 F.3d 1268, 1272 (11th Cir. 2002).

The REAL ID Act amended the judicial review provisions of 8 U.S.C. § 1252 to provide that "[n]otwithstanding any other provision of law . . . including section 2241 of Title 28 . . . a petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of an order of removal." 8 U.S.C. § 1252(a)(5). The REAL ID Act provides that

> [i]f an alien's case, brought under section 2241 of title 28, United States Code, and challenging a final administrative order of removal, deportation, or exclusion, is pending in a district court on the date of the enactment of this division, then the district court shall transfer the case (or the part of the case that challenges the order of removal, deportation, or exclusion) to the court of appeals for the circuit in which a petition for review could have been properly filed under section 242(b)(2) of the Immigration and Nationality Act.

REAL ID Act of 2005, Pub. L. No. 109-13, § 106(c), 119 Stat. 311 (2005). The provision then specifies that "[t]he court of appeals shall treat the transferred case as if it had been filed pursuant to a petition for review under such section 242, except that subsection (b)(1) of such section [requiring that petitions for review be filed within 30 days of the final removal order] shall not apply." Id.; see also Balogun v. United States Att'y Gen., 425 F.3d 1356, 1360 (11th Cir. 2005) (explaining that habeas review became unnecessary with the passage of § 106(a)(1)(A)(iii) of the REAL ID Act).

7

Although, pursuant to 8 U.S.C. §1252(a)(2)(B)-(C), we do not have jurisdiction to review discretionary decisions made by the Attorney General or the Secretary of the Department of Homeland Security, or a final order of removal against an alien who is removable for having committed a criminal offense pursuant to 8 U.S.C. §§ 1182(a)(2) or 1227(a)(2)(A)(iii), (B), (C), or (D), nothing in § 1252 precludes us from reviewing constitutional claims or questions of law raised upon a petition for review which is properly filed. 8 U.S.C. § 1252(a)(2)(D); see also Balogun, 425 F.3d at 1359 (holding that the REAL ID Act gave us jurisdiction to review a criminal alien's petition for review of an order of removal raising a question of law).

Utoh's 28 U.S.C. § 2241 petition challenging her deportation order was pending on the date that the REAL ID Act was enacted, and thus, was properly transferred to us. See 8 U.S.C. § 1252(a)(5); REAL ID Act § 106(c). Although her deportation was based upon a CIMT, we have jurisdiction to review her petition to the extent that it raises questions of law or constitutional claims. See 8 U.S.C. § 1252(a)(2)(D). Whether, under the undisputed facts of her case, Utoh can establish good moral character for purposes of eligibility for suspension of deportation is a question of law. Accordingly, we have jurisdiction to review her petition. See Balogun, 425 F.3d at 1360.

8

B. Good Moral Character

To the extent the BIA expressly adopts the decision of an IJ, we review the IJ's decision as a final decision of the agency. See Chacon-Botero, 427 F.3d at 956. We review the legal determinations of an agency such as the BIA de novo. Nreka v. United States Att'y Gen., 408 F.3d 1361, 1368 (11th Cir. 2005). In so doing, we accord substantial deference to that agency's interpretation of statutes and regulations that it administers. See United States v. Mead Corp., 533 U.S. 218, 226-27, 121 S. Ct. 2164, 2171 (2001) (Chevron[8] deference due when an agency acts according to legally delegated authority inherent in formal adjudication); INS v. Aguirre-Aguirre, 526 U.S. 415, 425, 119 S. Ct. 1439, 1445 (1999) ("BIA should be accorded Chevron deference as it gives ambiguous statutory terms 'concrete meaning through a process of case-by-case adjudication.'").

At the time of Utoh's deportation proceedings, the Attorney General could order suspension of deportation only where an alien

> [was] deportable . . . ; ha[d] been physically present in the United States for a continuous period of not less than ten years immediately following the commission of an act, or the assumption of a status, constituting a ground for deportation, and prove[d] that during all of such period [s]he ha[d] been and [was still] a person of good moral character.

---

[8]Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-44, 104 S. Ct. 2778, 2781-82 (1984).

8 U.S.C. § 1254(a)(2) (repealed 1996).  Even when an alien established these factors, the decision of whether to grant suspension of deportation remained within the discretion of the Attorney General.  Gomez-Gomez v. INS, 681 F.2d 1347, 1349 (11th Cir. 1982).   The applicant for suspension bore the burden of demonstrating both statutory eligibility and that the equities merited a favorable exercise of discretion.  8 C.F.R. § 240.64(a) (2001).

Federal law provides that any alien who, at any time after admission, is convicted of two or more CIMTs, not arising out of a single scheme of criminal misconduct, is deportable.  8 U.S.C. § 1227(a)(2)(A)(ii).[9]  The BIA has clarified that the ten-year period, when deportability involves CIMTs, begins with the conviction rather than the commission of the CIMTs.  Lozada, 19 I. & N. Dec. at 640.  Federal law also provides that no person shall be found to be a person of good moral character who, during the period for which good moral character is required to be established, admits committing acts which constitute the essential elements of a CIMT.  8 U.S.C. § 1182(a)(2)(A); 8 U.S.C. § 1101(f)(3).  The BIA has clarified that an alien's "conviction for making false statements, in order to fraudulently obtain a passport in another person's name, is [a conviction] for a crime involving moral turpitude."  In re Correa-Garces, 20 I. & N. Dec. 451, 454 (BIA 1992).

---

[9]Formerly, INA § 241(a)(4); 8 U.S.C. § 1251(a)(4) (1988).

In this case, the IJ concluded that "respondent has less than 10 years of good moral character based upon the conviction for passport fraud that occurred 5/5/1989" and found that she was "not eligible for the relief of suspension of deportation." AR at 65. The IJ's decision is supported by law. First, it is undisputed that Utoh was rendered deportable by the 1988 CIMT convictions. See 8 U.S.C. § 1227(a)(2)(A)(ii). Thus, the ten-year period immediately following her assumption of deportability would have begun in October 1988 and run through October 1998. Second, it is undisputed that Utoh was convicted of making a false statement on a passport application in May 1989. Utoh's May 1989 conviction was properly considered a CIMT. See Correa-Garces, 20 I. & N. Dec. at 454. As a result, Utoh could not be regarded as a person of good moral character because the May 1989 CIMT conviction occurred during the ten-year period for which good moral character was required for eligibility for suspension of deportation. See 8 U.S.C. § 1182(a)(2)(A); 8 U.S.C. § 1101(f)(3). Thus, as a matter of law, Utoh's May 1989 CIMT conviction deprived her of good moral character status and left her ineligible for suspension of deportation.[10]

---

[10]Because it appears that the IJ made his decision based on the third eligibility requirement – good moral character – rather than on the ten-year residency requirement, and because that decision is supported by law, we do not reach the INS's arguments regarding the "stop time" rule, 8 U.S.C. § 1229b(d)(1).

11

### III. CONCLUSION

Utoh has petitioned for review of the final order of the BIA, which adopted the decision of the IJ ordering deportation and denial of voluntary departure under the former INA. Because, as a matter of law, Utoh could not establish good moral character, she could not satisfy the initial elements required for eligibility of suspension of deportation. Accordingly, we **DENY** her petition.