[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-13600
Non-Argument Calendar
_____

D. C. Docket No. A088-719-162

MIN JUN JIANG,

Petitioner,

versus

U. S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(October 16, 2012)

Before HULL, EDMONDSON and BLACK, Circuit Judges.

PER CURIAM:

Min Jun Jiang, a native and citizen of China, petitions for review (with the assistance of counsel) the order by the Board of Immigration Appeals ("BIA") that affirmed the decision of the Immigration Judge ("IJ").  The decision denied asylum, withholding of removal, and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT").[1]  No reversible error has been shown; we deny the petition.

We review the IJ's and the BIA's decisions in this case because the BIA agreed with much of the IJ's reasoning.  See Kazemzadeh v. U.S. Att'y Gen., 577 F.3d 1341, 1350 (11th Cir. 2009) (explaining that when the BIA agrees with the IJ's findings, we review both decisions).  We review legal determinations de novo. Id.  And we review fact determinations under the "highly deferential substantial evidence test" whereby we "must affirm the BIA's decision if it is 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'"  Adefemi v. Ashcroft, 386 F.3d 1022, 1026-27 (11th Cir. 2004) (en banc).  We "view the record evidence in the light most favorable to the . . . decision and draw all reasonable inferences in favor of that decision"; and we may

---

[1] On appeal, Jiang offers no argument on the denial of CAT relief; therefore, this claim is abandoned. See Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 n. 2 (11th Cir.2005) (explaining that a petitioner abandons an issue by failing to offer argument on that issue).

reverse the agency's fact determination "only when the record compels a reversal." Id. at 1027.

An alien may obtain asylum if she is a "refugee," that is, a person unable or unwilling to return to her country of nationality "because of persecution or a well-founded fear of persecution on account of" a protected ground, including political opinion. 8 U.S.C. §§ 1101(a)(42)(A); 1158(a)(1), (b)(1). The asylum applicant bears the burden of proving statutory "refugee" status with specific and credible evidence. Forgue v. U.S. Att'y Gen., 401 F.3d 1282 1286-87 (11th Cir. 2005) (citation omitted).

Jiang sought asylum based on her fear of persecution for violating China's family planning policy. In her written asylum application, Jiang, who was born in 1990, recounted that she met her boyfriend in February 2006. In September 2006, Jiang discovered that she was pregnant; she became fearful that government officials in her hometown in Fujian Province would discover her pregnancy and force her to undergo an abortion and sterilization surgery because she was under the legal age for marriage and birth. Jiang and her boyfriend rented an apartment in a different village in an attempt to conceal her pregnancy; but the local committee in her home village became suspicious and began visiting her parents' house, demanding that Jiang return home for a pregnancy examination.

3

Following the birth of her son in May 2007, Jiang described that local government officials continued to visit her parents' home to inquire about her whereabouts. Jiang stated that she and her boyfriend continued to live in fear for the first two years of their son's life, as they remained under the legal age for marriage and were worried that they would be targets for fines or forced sterilization.

The IJ concluded that Jiang was not credible, basing the determination on inconsistences between Jiang's asylum application, her testimony at her removal hearing, and a supporting letter from her father. First, Jiang had been unable to explain discrepancies about how and when local government officials discovered her pregnancy. At her removal hearing, Jiang testified that authorities were alerted to her pregnancy in December 2006. But, in her asylum application, she failed to mention that someone reported her pregnancy to the authorities, and her father's letter noted that family planning officials only became interested in Jiang in May 2007, after she gave birth to her son. The IJ stated that the second, and more serious, inconsistency was on Jiang's living situation during and after her pregnancy. In Jiang's asylum application, she recounted that she lived with her boyfriend from March 2006 to October 2007 and then lived in company housing until she left China in February 2009. By contrast, her father's letter indicated that

4

Jiang fled her parents' home to hide in a relative's house only after she had given birth. In her testimony, there was no mention of Jiang or her boyfriend living with a relative; it was only after the IJ questioned Jiang about the mention of a relative in her father's letter that Jiang did offer that she lived with a distant relative known as "Po-po." The IJ stated that who Jiang lived with and where she lived were not "really material to the heart of the case," but that the inconsistencies did call into question her overall credibility.

The IJ also concluded that Jiang had not credibly demonstrated a well-founded fear of future persecution. There was no mention in the U.S. Department of State's 2007 China Profile of Asylum Claims and Country Conditions ("2007 Country Profile"), or elsewhere, that women -- under the legal age of marriage who had children -- were subject to forced sterilization or that such a procedure would occur more than three years after the woman had given birth. Instead, correspondence from Fujian Province indicated that there had been no cases of forced sterilization in the last ten years.

Jiang appealed the IJ's decision to the BIA and filed a supplementary motion to reopen and remand her case for consideration of additional evidence. The BIA agreed with the IJ's adverse credibility determination and further denied her motion to remand.

On appeal, Jiang argues that the IJ's and BIA's adverse credibility determination was not supported by substantial evidence and was based on minor inconsistencies.[2]  An adverse credibility determination alone may be sufficient to support the denial of asylum relief.  Forgue, 401 F.3d at 1287.  But "an adverse credibility determination does not alleviate the IJ's duty to consider other evidence produced by an asylum applicant."  Id.

The IJ and BIA provided "specific, cogent reasons" for the credibility determination, which is supported by substantial evidence.  See id.  Nothing in the record compels us to substitute our judgment on this issue.  Jiang failed to explain adequately the inconsistences on when authorities became aware of her pregnancy and to explain the conflicting and unresolved accounts of her living situation.  To the extent that Jiang argues that the adverse credibility determination was based on discrepancies that did "not go to the heart of the issue," she ignores the applicable statutory standard, which permits a trier of fact to base its credibility determination on "any inaccuracies or falsehoods . . . without regard to whether [they] go[] to the

---

[2] Jiang also alleges that the BIA erred as a matter of law by failing to address her contention that her reference to "Po-po" as both her grandmother and as a distant relative was not inconsistent.  The BIA did not base its adverse credibility determination on this issue, however.  Even if Jiang's explanation for this inconsistency was reasonable, the BIA was not required to accept or address it.  See Adefemi, 386 F.3d at 1027 (stating that "the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings").

heart of the applicant's claim."  8 U.S.C. § 1158(b)(1)(B)(iii).  Even one inconsistency, on relatively minor details, may justify an adverse credibility determination.  See Xia v. U.S. Att'y Gen., 608 F.3d 1233, 1240-41 (11th Cir. 2010) (concluding that an adverse credibility determination was supported where the applicant's testimony "included at least one internal consistency (how old she was when she had the abortion) and one omission (identifying data on the abortion operations certificate)").

In the light of the 2007 Country Profile, on which the BIA was entitled to rely, and of the lack of record evidence to corroborate Jiang's testimony, substantial evidence supports the BIA's denial of Jiang's asylum application.[3]  See Reyes-Sanchez v. U.S. Att'y Gen., 369 F.3d 1239, 1243 (11th Cir. 2004) (the BIA may "rely heavily" on reports prepared by the State Department that have been admitted into the record, as such reports are the most appropriate and perhaps the best resource for obtaining information on political situations abroad).

Jiang also argues that the BIA erred by denying her motion to remand, through which she sought to submit additional evidence that called into question the reliability of the 2007 Country Profile.  By denying her motion, Jiang

---

[3] Because Jiang has failed to establish her eligibility for asylum, she has necessarily failed to meet the higher standard for withholding of removal. See Djonda v. U.S. Att'y Gen., 514 F.3d 1168, 1177 (11th Cir. 2008).

maintains that the BIA ignored countervailing evidence in the record that she

argues established her well-founded fear of future persecution.

A motion to remand that seeks to introduce evidence that has not previously

been presented is generally treated as a motion to reopen.  8 C.F.R. § 1003.2(c)(4);

Chacku v. U.S. Att'y Gen., 555 F.3d 1281, 1286 (11th Cir. 2008).  We review the

BIA's denial of a motion to reopen for abuse of discretion.  See Chacku, 555 F.3d

at 1286.  A motion to reopen must "state the new facts that will be proven at a

hearing to be held if the motion is granted and shall be supported by affidavits or

other evidentiary material. . . . A motion to reopen proceedings shall not be

granted unless it appears to the Board that evidence sought to be offered is

material and was not available and could not have been discovered or presented at

the former hearing[.]"  8 C.F.R. § 1003.2(c)(1).  "New" evidence is that which was

not available at the alien's "former hearing."  Balogun v. U.S. Att'y Gen., 425

F.3d 1356, 1362 (11th Cir. 2005).  To prove that the new evidence is also material,

the alien bears a "heavy burden," as she must establish that, if the proceedings

were reopened, the new evidence would likely change the result in the case.  Ali v.

U.S. Att'y Gen., 443 F.3d 804, 813 (11th Cir. 2006).

Jiang's supporting evidence to her motion to remand -- specifically the State

Department cables she received in response to a Freedom of Information Act

8

request -- failed to establish that the outcome of her case would have been different if such evidence had been considered by the IJ. See id. The cables were in fact consistent with the 2007 Country Profile: both reported that, while China's family planning policy contained coercive elements such as fines and permits, nothing indicates that forced abortion or sterilization was a common or routine practice in Fujian Province. In addition, none of the documentary evidence provided by Jiang in support of her motion to remand indicated that women who gave birth when they were under the legal marriage age would be subject to involuntary sterilization. Because Jiang offered no evidence that was both material and previously unavailable, the BIA did not abuse its discretion in denying her motion to remand.

PETITION DENIED.

9