**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————————

No. 23-14148

————————————————

ODAIN ORLANDO MARSH,

                                                                    *Petitioner,*

*versus*

U.S. ATTORNEY GENERAL,

                                                                    *Respondent.*

————————————————

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. 214-081-171

————————————————

Before MARCUS and WILSON, Circuit Judges, and JONES,* District
Judge.

———————————————

* Honorable Steve C. Jones, United States District Judge for the Northern District of Georgia, sitting by designation.

PER CURIAM:

Odain Orlando Marsh, a native and citizen of Jamaica, petitions for review of his Final Administrative Removal Order ("FARO"), which was issued by the Department of Homeland Security ("DHS") to Marsh as a noncitizen convicted of an aggravated felony during his expedited removal proceedings under Section 238(b) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1228(b). DHS concluded that Marsh's conviction for conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349 was an "aggravated felony" because the amount of loss exceeded $10,000. On appeal, Marsh argues: (1) that the DHS erred in concluding that his conviction for conspiracy to commit wire fraud was an aggravated felony under INA § 101(a)(43)(U), 8 U.S.C. § 1101(a)(43)(U), and (2) that his procedural due process rights were violated. Because the record contains substantial evidence that the amount of loss exceeded $10,000, we find that Marsh was convicted of an aggravated felony. We also determine that he was not denied procedural due process and deny the petition.

## I.    FACTUAL    BACKGROUND    AND    PROCEDURAL HISTORY

On October 26, 2023, pursuant to a negotiated plea agreement, Marsh was found guilty of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349, and was sentenced to thirteen months' imprisonment and three years of supervised release. The judgment indicated that restitution would be determined at a later time. On November 28, 2023, the district court entered an

amended judgment that imposed restitution in the amount of $9,850.

Marsh, his attorneys, and attorneys for the United States submitted a Factual Proffer to the district court in Marsh's underlying criminal case. The Proffer states that Marsh knowingly entered into a scheme to defraud others by false pretenses. The "general purpose of the fraud scheme was to obtain titles to and/or monetize vehicles through the submission of fraudulent paperwork." Marsh had at least a "general understanding" of the unlawful purpose of the plan and "willfully joined in the plan on multiple occasions."

Between April 2018 and January 2019, Marsh picked up fraudulent title applications and mechanic's lien paperwork from a co-conspirator and delivered the paperwork to another co-conspirator, with the knowledge that the paperwork would be submitted to a Florida tag agency for processing and would result in the issuance of a Florida vehicle title. Marsh sometimes picked up vehicle titles and transported them back to the co-conspirator who provided the original paperwork. Marsh was aware that the fraudulently obtained vehicle titles removed all prior owners and lien holders from the title, or if the vehicle was stolen, created a new title with a fraudulent vehicle identification number.

Marsh also facilitated a vehicle "give up" and then sold the vehicle to a third-party purchaser. A vehicle "give up" occurs when the owner of a vehicle no longer wants to make financing pay-

ments and sells the vehicle for a small fee, and the lienholder is removed from the title by filing fraudulent mechanic's lien paperwork. The vehicle can then be sold for full value without a lien. Specifically, Marsh admitted that he sold a Dodge Challenger car to Carvana for $28,161, and he falsely represented that he owned the vehicle and was providing a valid and negotiable title to Carvana. With the assistance of co-conspirators, Marsh had obtained a Florida title to the car by submission of paperwork that falsely indicated he purchased the vehicle at a mechanic's lien sale when Marsh knew that he had not done so and was not the rightful owner of the vehicle when he sold it to Carvana.

On November 7, 2023, DHS issued to Marsh a Notice of Intent to Issue a FARO pursuant to INA § 238(b), 8 U.S.C. § 1228(b), alleging that Marsh was a native and citizen of Jamaica, not admitted as a lawful permanent resident, and that in October 2023, in the Southern District of Florida, he committed the offense of conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349. As such, the Notice contended that Marsh was deportable because he was convicted of an "aggravated felony" as described in INA § 101(a)(43)(U), 8 U.S.C. § 1101(a)(43)(U), and subject to removal without a hearing before an Immigration Judge.[1]

---

[1] The INA provides that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii). The statute authorizes the Attorney General to institute expedited administrative removal proceedings with respect to noncitizens convicted of aggravated felonies. *See* INA § 238(b), 8 U.S.C. § 1228; 8 C.F.R. § 238.1.

On November 21, 2023, Marsh responded to the Notice of Intent. Marsh argued that he had not been convicted of an aggravated felony and therefore was not statutorily eligible for a FARO under INA § 238(b), 8 U.S.C. § 1228(b), because he was not convicted of a fraud offense with a loss to the victim of $10,000 or more. Marsh asserted that the loss amount was $9,500 which was the restitution ordered in his criminal case. Marsh also argued that he was eligible for other forms of relief and should be permitted to adjust his status.

On November 24, 2023, the Government issued a FARO, which found that Marsh was not a citizen, that he had a final conviction for an aggravated felony as defined by INA § 101(a)(43)(U), 8 U.S.C. § 1101(a)(43)(U), and that he was ineligible for any relief from removal. The Government found that removability was established by clear, convincing, and unequivocal evidence and ordered him removed.

Marsh filed a timely petition for review. The Government submitted the initial agency record on appeal. Marsh filed a motion to supplement the record, explaining that his response to the Notice of Intent and attached exhibits were not included in the agency record the Government had provided. The Government concurred that Marsh's response and accompanying documents were not in the record prior to the issuance of the FARO on November 24, 2023. However, the Government agreed to take Marsh's response under advisement in accordance with 8 C.F.R. § 238.1(c), and, after review, to either re-issue the FARO or rescind it. On May

16, 2024, the Government re-issued the FARO. It was identical to the previously-issued FARO except that it was signed by a different DHS employee.

## II.    STANDARD OF REVIEW

The court has jurisdiction to review orders of removal but is constrained by the Immigration and Nationality Act ("INA"), which provides that "no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in" 8 U.S.C. § 1227(a)(2)(A)(iii). 8 U.S.C. § 1252(a)(2)(C). But the court retains jurisdiction over "constitutional claims or questions of law raised upon a petition for review." 8 U.S.C. § 1252(a)(2)(D). "[W]e have jurisdiction to decide in a petition for review proceeding whether the BIA erred in determining that a petitioner's conviction is an aggravated felony." *Balogun v. U.S. Att'y Gen.*, 425 F.3d 1356, 1359–60 (11th Cir. 2005).

While we review *de novo* whether a conviction qualifies as an aggravated felony, *Garcia-Simisterra v. U.S. Attorney General*, 984 F.3d 977, 980 (11th Cir. 2020), we review the agency's factual findings about the amount of loss under "the highly deferential substantial evidence test." *Id.* (citing *Adefemi v. Ashcroft*, 386 F.3d 1022, 1026–27 (11th Cir. 2004)). Under this test, "we view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." *Id.* (citation omitted). The agency's "findings of fact are conclusive unless any

reasonable adjudicator would be compelled to conclude to the contrary." *Id.* at 980–81 (citation omitted). *See also Adefemi*, 386 F.3d at 1027 (holding that we may only reverse factual findings made by the BIA "when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings"). As such, "we apply an exceedingly deferential standard of review to the agency's fact-finding about the amount of loss." *Garcia-Simisterra*, 984 F.3d at 980–81. We will uphold the agency's determination of the loss amount if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Id.* at 981 (citation omitted). If substantial evidence supports the agency's conclusion, we lack jurisdiction over the petition for review. *Id.* at 982 (citations omitted).

We review *de novo* Marsh's constitutional due process claim. *Lapaix v. U.S. Att'y Gen.*, 605 F.3d 1138, 1143 (11th Cir. 2010).

## III.    DISCUSSION

### A.    Aggravated Felony

A noncitizen "convicted of an aggravated felony at any time after admission" is removable under Section 237(a) of the INA, 8 U.S.C. § 1227(a)(2)(A)(iii). An "aggravated felony" includes an offense that "involves fraud or deceit in which the loss to the victim or victims exceeds $10,000," or a conspiracy to commit such an offense. INA § 101(a)(43)(M)(i), (U), 8 U.S.C. § 1101(a)(43)(M)(i), (U). The government must present to the agency clear and convincing

evidence that the loss amount exceeds $10,000. *See* 8 U.S.C. § 1229a(c)(3)(A); *Nijhawan v. Holder*, 557 U.S. 29, 42 (2009).

In *Nijhawan*, the Supreme Court held that the loss amount under 8 U.S.C. § 1101(a)(43) referred to the specific, factual circumstances surrounding the conviction, rather than a general element of the fraud offense. 557 U.S. at 40. As such, we do not look to the "statute defining the offense," but rather we consider the "facts and circumstances underlying an offender's conviction." *Id.* at 34. In *Garcia-Simisterra*, we found that to make this determination, we "may consider the entire record from a person's conviction." 984 F.3d at 981. Notably, in *Garcia-Simisterra*, we rejected the petitioner's argument that we were limited to considering the charges to which the petitioner pled guilty. *Id.* at 981–82. Rather, under *Nijhawan*, we may look to "the essential facts and circumstances underlying the petitioner's conviction [which] are laid out in the criminal information and the plea agreement." *Id.* at 982. As such, we are not limited to the restitution judgment, as Marsh argues here. *Id.*; *see also Munroe v. Ashcroft*, 353 F.3d 225, 227 (3d Cir. 2003) (Alito, C.J.) ("The amount of restitution ordered as a result of a conviction may be helpful to a court's inquiry into the amount of loss to the victim . . . . But when the amount of restitution ordered is not based on a finding as to the amount of the loss but is instead intended solely to affect the defendant's immigration status, the amount of restitution is not controlling.").

Here, we find that substantial evidence in the record supports DHS's conclusion that the loss exceeded $10,000. The Factual

Proffer outlines a wide-ranging scheme that took place at least between April 2018 and January 2019 and included at least three methods of fraud: (1) a vehicle "give up," (2) the fraudulent changes of title, and (3) the fraudulent mechanic's lien paperwork. Marsh's involvement in this scheme was not limited to one car. The Factual Proffer indicates that Marsh picked up fraudulent title applications (plural) and vehicle titles (plural) and that he "willfully joined in the plan on multiple occasions" (plural). The Factual Proffer then describes one particular vehicle involved in the "give ups" alleged in the indictment. On October 25, 2018, Marsh sold a 2016 Dodge Challenger to Carvana for $28,161, falsely representing that he owned the vehicle and was providing a valid title. As a result, Carvana, the victim with respect to this particular car, paid out $28,161 and received a car with no valid title. That transaction alone would satisfy the $10,000 in losses required for an aggravated felony.

### B. Due Process

Noncitizens in removal proceedings have the right to due process under the Fifth Amendment. *Lapaix*, 605 F.3d at 1143. Due process requires that a petitioner be given notice and an opportunity to be heard in his removal proceedings. *Id.* To establish a due process violation in a deportation proceeding, a petitioner must show that he was deprived of his liberty without due process and that the alleged error caused him substantial prejudice. *Id.* To establish substantial prejudice, a petitioner must show that the alleged deprivation of due process affected the outcome of the proceeding. *Id.*

In expedited removal proceedings under 8 U.S.C. § 1228(c), a noncitizen with an aggravated felony conviction is "conclusively presumed to be deportable," *id.*, and ineligible for discretionary relief from removal. *Id.* § 1228(b)(5). But the expedited removal statute and the regulations promulgated under it protect noncitizens' rights to procedural due process. *Id.* § 1228(b)(4). These protections include giving the noncitizen a reasonable opportunity to inspect the evidence, and to rebut the charges. *Id.* § 1228(b)(4)(C).

Marsh argues that the Government denied him due process because it did not give him an opportunity to review the evidence against him or to be heard and present testimony on loss amount and instead relied on his plea agreement. He contends that he asked for an opportunity to review the evidence and was not given one. Marsh also avers that had he been given the opportunity, he would have presented testimony that (1) he only entered into the plea agreement based on the understanding that the loss amount would be less than $10,000, and (2) his attorney in the underlying criminal case would not have advised him to enter a guilty plea agreement where the loss was greater than $10,000 because of the immigration consequences. He avers that DHS treated him as if he had entered into a different plea agreement where the loss amount was greater than $10,000.

The evidence used by DHS to determine loss amount was the fact of Marsh's underlying criminal conviction and the statutory violation, as well as the Factual Proffer that was part of the negotiated plea that was signed by Marsh and his attorney in the

criminal case. Because Marsh and his attorney both signed the Factual Proffer and were aware of the indictment and charges against him, we find that Marsh did have notice of the evidence used against him.

Moreover, as described above, Marsh did respond and present evidence to the DHS during the removal proceedings, albeit after the first FARO was issued. Marsh argued to DHS that the restitution judgment of less than $10,000 should control the loss amount and contended that he would be eligible for a hardship adjustment of status. DHS had Marsh's response, but decided to reissue the FARO after reviewing it.

Finally, to the extent Marsh could show he was denied due process, he cannot establish he suffered substantial prejudice as a result. The only argument Marsh makes as to evidence he wished to present are that he agreed to the plea because he thought he was admitting to a loss amount under $10,000, and that his criminal defense attorney would have testified that he would not have advised Marsh to enter into a plea agreement with a loss amount greater than $10,000 because of the immigration consequences. These contentions, however, are not related to whether the Government had submitted sufficient evidence for the agency to conclude that the loss amount was greater than $10,000. Marsh has not proffered any evidence conflicting with DHS's determination that the loss amount was greater than $10,000. As such, Marsh cannot show that evidence he wished to present would have changed the outcome

of the proceedings, and therefore, cannot show substantial prejudice for any alleged violation of due process.

### IV.    CONCLUSION

Because Marsh's conviction constituted an attempt or conspiracy to commit an offense involving fraud that had a loss exceeding $10,000, the Government did not err in concluding that the conviction constituted an aggravated felony under subsection (U). Moreover, Marsh cannot establish that DHS denied him his due process rights.

**PETITION DENIED.**