[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 7, 2006
THOMAS K. KAHN
CLERK

No. 05-16095
Non-Argument Calendar
_____

BIA No. A13-632-599

ISMAEL GARCIA,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

**(June 7, 2006)**

Before BIRCH, CARNES and PRYOR, Circuit Judges.

PER CURIAM:

Ismael Garcia, a native and citizen of Cuba, petitions for review of the order of the Board of Immigration Appeals ("BIA") affirming with an opinion the determination by the Immigration Judge ("IJ") denying asylum and withholding of removal under the Immigration and Naturalization Act ("INA"), 8 U.S.C. §§ 1158, 1231, and relief under the United Nations Convention Against Torture ("CAT"), 8 C.F.R. § 208.16(c).[1]  Although we generally lack jurisdiction, pursuant to 8 U.S. C. § 1252(a)(2)(C), to review Garcia's final order of removal because he is a criminal alien,[2] we do have jurisdiction, granted by § 106(a)(1)(A)(iii) of the REAL ID Act, Pub. L. 109-13, 119 Stat. 231, 310 (2005), to review any constitutional claims. Our review reveals no violation of Garcia's due process rights.  Accordingly, the petition for review is DISMISSED in part and DENIED in part.

---

[1]Although Garcia cites asylum law in his brief, he also concedes that he "is statutorily ineligible for asylum as a result of his conviction" and he fails to raise any issue relating to the denial of his asylum claim.  Petitioner's Br. at 8.  It thus appears that Garcia is only arguing the denial of withholding of removal under the INA and the CAT and does not challenge the dismissal of his asylum claim.  Accordingly, his asylum claim is deemed abandoned.  See Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2004) (per curiam).

[2]Garcia also argues on appeal that his crime, possession of marijuana, is not a "particularly serious crime" pursuant to 8 U.S.C. § 1231(b)(3)(B)(ii) such as would warrant denial of withholding of removal.  Garcia argued the same issue on appeal before the BIA, and the BIA specifically clarified that neither its nor the IJ's denial of Garcia's withholding of removal claim was based on a finding that the possession of marijuana charge was a "particularly serious crime" under 8 U.S.C. § 1231(b)(3)(B)(ii).  Thus, this issue is moot before us.

Additionally, Garcia has not challenged the IJ's denial of his applications for adjustment of status and cancellation of removal either before the BIA or before us.  Thus, these issues are deemed abandoned.  See Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1286 n.3 (11th Cir. 2003) (stating that decisions not challenged in a petitioner's brief are deemed abandoned on appeal).

# I. BACKGROUND

Garcia entered the United States in November 1963 and, in November 2002, was issued a notice to appear charging that, at the time he applied for admission to the United States, he had not possessed a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document, as required by INA § 211(a). Additional charges of removability were based on Garcia's October 1978 plea of guilty as to possessing more than five grams of cannabis in Brevard County, Florida. Garcia had been placed on three years probation for that offense. The guilty plea and related charges served as the basis for deportation or removability on the following three grounds: (1) his being an alien who has admitted committing acts constituting the essential elements of any state, federal, or international controlled substance violation, pursuant to 8 U.S.C. § 1182(a)(2)(A)(i)(II); (2) an immigration officer knowing or having reason to believe that he was an illicit trafficker in any controlled substance or has knowingly conspired or assisted in illicit trafficking in any controlled substance, pursuant to 8 U.S.C. § 1182(a)(2)(C)(i); and (3) his having admitted to committing an act constituting the essential elements of a crime of moral turpitude, pursuant to 8 U.S.C. § 1182(a)(2)(A)(i)(I).

In January 2003, Garcia filed an application for asylum and withholding of removal along with an application to adjust his status to that of a permanent

3

resident. His application for asylum and withholding of removal was based on his political opinion and membership in a particular social group. In his application, he wrote that the Cuban government "persecuted" him and his family because they "[dis]agree[d] with the communis[t] system." Administrative Record ("AR") at 151. He reported that he was incarcerated three times, charged as a "suspect of sabotage against the revolution," and "physiologically tortured." Id. For these reasons, he left for the United States in 1963 with his brother, Oscar Garcia ("Oscar"). Id. Garcia claimed that, in 1965, he and Oscar became CIA informants and were trained "in infiltration and information matters." Id. Garcia wrote that he believed that he would be tortured if he returned to Cuba because the "Cuban government does not forgive those who give any information to the United States." Id. He explained that another of his brothers, Rufino Garcia ("Rufino"), had been incarcerated for 12 years, from 1960 to 1972, because he was an enemy of the Castro regime. Id. at 152. Garcia also claimed that one (he did not say which) of his brothers had belonged to the "Rosa Blanca" group, whose purpose was to conspire against the Castro regime. Id. He claimed that both of his brothers had been granted asylum. Id. at 153. Garcia also admitted on his asylum application that he had been charged in 1978 with possession of cannabis and had been denied lawful permanent resident status because of having plead guilty thereto. Id. at 152, 154.

4

Garcia attached numerous exhibits to his application. The only exhibit relevant to this appeal, however, is a copy of the criminal docket sheet showing that in 1978 Garcia was sentenced to three years' probation by the Eighteenth Judicial Circuit Court of Brevard County, Florida after pleading guilty to possession of more than five grams of cannabis. Id. at 190-91. The same criminal docket sheet showed that Garcia was also charged with: (1) sale, delivery, or possession of more than 100 pounds of cannabis; (2) importation of a controlled substance; (3) possession of a controlled substance with intent to sell or deliver; and (4) conspiring to commit a criminal offense. These four counts were nolle prosequi. Id. at 191.

At his hearing, Garcia testified to the following information relevant to this appeal. As to his asylum application, Garcia further explained that Rufino had left Cuba in 1979 and lived in the United States until he died in July 2002. Id. at 118. Oscar had traveled with Garcia to the United States. Id. At that point in the hearing, the following exchange occurred:

[Garcia's Attorney]: What is [Oscar's] status here in the United States?

[Garcia]: Citizen

[Garcia's Attorney]: Okay or . . . Do you know how he received his citizenship?

5

[IJ]: What relevance does that have?  He's American.  What relevance does it have as to how he became a citizen?

[GA]: Okay. Well, I'll ask another questions.  How's that?

Id. at 119.

As to his application for adjustment of status, Garcia explained that he had been arrested in the United States three times, but only one of the arrests resulted in a sentence.  Id. at 122-23.  Garcia explained that he had been arrested for and had plead guilty in 1978 to unloading marijuana from a truck and that he had served one night in jail and three years of probation.  Id. at 123.

In his oral decision, the IJ first found that Garcia was removable for:  (1) his admission to a crime of moral turpitude pursuant to 8 U.S.C. § 1182(a)(2)(A)(i)(I); (2) his controlled substance violation pursuant to 8 U.S.C. § 1182(a)(2)(A)(i)(II); and (3) the IJ having reason to believe that Garcia is an alien who is or has been a trafficker, or a conspirator in trafficking, in a controlled substance pursuant to 8 U.S.C. § 1182(a)(2)(A)(i)(I).  Then, as to Garcia's withholding of removal claim under the INA, the IJ found, inter alia, that Garcia had failed to show that it was more likely than not that he would be subject to persecution on account of one of the five enumerated grounds set forth in 8 U.S.C. § 1231(b)(3).  The IJ explained that Garcia had failed to prove:  (1) that the Cuban government's actions were on account of an enumerated ground; (2) the existence of past persecution or a well-

6

founded fear of future persecution; and (3) that his involvement with the CIA was anything but minimal. The IJ also found, as to Garcia's withholding of removal claim under the CAT, that Garcia had failed to show that he would more likely than not be tortured if he returned to Cuba. The IJ explained that, despite Garcia's three arrests in Cuba, after he was released from his last arrest, he remained in Cuba for a year and a half without any difficulty before he departed for the United States. Moreover, the IJ reiterated that Garcia's testimony and evidence as to any claimed involvement with the CIA was too minimal to show a likelihood of torture. Thus, the IJ denied all of Garcia's claims, including withholding of removal under the INA and the CAT.

On appeal before the BIA, Garcia argued the same issues he now argues before us. The BIA adopted the IJ's findings denying Garcia's asylum and withholding of removal under the INA and the CAT. The BIA also addressed Garcia's assertion that the IJ improperly precluded him from submitting information about his brother's grant of asylum by finding that Garcia had failed to establish how he had been prejudiced by the IJ's alleged limitation of his testimony. The BIA noted that Garcia had not even provided any statement about what testimony would have been offered that would have changed the result in his case. Accordingly, the BIA concluded that Garcia's due process rights had not been violated. The BIA also noted that the IJ had not denied Garcia's withholding

of removal claim on the basis that Garcia had committed a "particularly serious crime." AR at 3 n.2. The IJ's decision was affirmed and the appeal dismissed.

## II. DISCUSSION

When the BIA issues a decision, we review only that decision, "except to the extent that it expressly adopts the IJ's opinion." Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). Here, in addition to reviewing the BIA decision, we review the IJ's opinion because the BIA has adopted it in full. See D-Muhumed v. U.S. Att'y Gen., 388 F.3d 814, 818 (11th Cir. 2004). In so doing, we review legal determinations by either the BIA or the IJ de novo. Id. at 817.

A. Jurisdiction

"We review subject matter jurisdiction de novo." Gonzalez-Oropeza v. U.S. Att'y Gen., 321 F.3d 1331, 1332 (11th Cir. 2003) (per curiam). Our jurisdiction to review orders of removal has, in the past, been restricted by 8 U.S.C. § 1252(a)(2)(C), which provides that:

> no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section 1182(a)(2) or 1227(a)(2)(A)(iii), (B), (C), or (D) of this title, or any offense covered by section 1227(a)(2)(A)(ii) of this title for which both predicate offenses are, without regard to their date of commission, otherwise covered by section 1227(a)(2)(A)(i) of this title.

8 U.S.C. § 1252(a)(2)(C); see Balogun v. U.S. Att'y Gen., 425 F.3d 1356, 1359 (11th Cir. 2005) (explaining that our jurisdiction to review final orders of removal

was significantly restricted by 8 U.S.C. § 1252(a)(2)(C)), <u>cert. denied</u>, __ U.S.

__,126 S. Ct. 1920 (2006).  Title 8 U.S.C. § 1182(a)(2)(i) states that:

> Except as provided in clause (ii),[3] any alien convicted of, or who
> admits having committed, or who admits committing acts which
> constitute the essential elements of –
> (I) a crime involving moral turpitude (other than a purely political
> offense) or an attempt or conspiracy to commit such a crime, or
> (II) a violation of (or a conspiracy or attempt to violate) any law or
> regulation of a State, the United States, or a foreign country relating to
> a controlled substance (as defined in section 802 of Title 21), is
> inadmissible.

8 U.S.C. § 1182(a)(2)(A)(i).  Nevertheless, we have held that §106(a)(1)(A(iii) of

the REAL ID Act, as it relates to judicial review of orders of removal, expands our

jurisdiction to allow consideration of constitutional claims and questions of law by

way of 8 U.S.C. § 1252(a)(2)(D), which provides that:

> Nothing in subparagraph (B) or (C), or in any other provision of this
> Act (other than this section) which limits or eliminates judicial review,
> shall be construed as precluding review of constitutional claims or
> questions of law raised upon a petition for review filed with an
> appropriate court of appeals in accordance with this section.

8 U.S.C. § 1252(a)(2)(D) (as amended by REAL ID Act § 106(a)); <u>see</u> <u>Balogun</u>,

425 F.3d at 1359-60 (explaining that the REAL ID Act  gave us jurisdiction to

review a criminal alien's petition for review of an order of removal raising a

question of law).

---

[3]The exception in clause (ii) applies only to aliens who have committed only one crime of moral turpitude as listed in (i)(I) and does not apply to those who have committed controlled substance offenses as listed in (i)(II).  <u>See</u> 8 U.S.C. § 1182(a)(2)(A)(ii).

Because Garcia does not challenge his own admission to possession of cannabis (a controlled substance offense) and concedes that he is removable on that basis, he is an inadmissable alien pursuant to 8 U.S.C. § 1182(a)(2)(i). Thus, to the extent Garcia is requesting that we review factual determinations by the IJ or BIA denying him withholding of removal under the INA and the CAT, we lack jurisdiction pursuant to 8 U.S.C. § 1252(a)(2)(C) and the REAL ID Act to review such discretionary determinations, and we must dismiss the petition. See, e.g., Chacon Botero v. U.S. Att'y Gen., 427 F.3d 954, 957 (11th Cir. 2005) (per curiam) (holding that despite the expansion of jurisdiction provided by the REAL ID Act we do not have jurisdiction to address time bar issues, which are neither constitutional issues nor questions of law). However, as Garcia maintains, we have jurisdiction to review Garcia's constitutional claim that his due process rights were violated during his removal hearing by the IJ's alleged limiting of his presentation of evidence. We now review that issue.

B. Due Process

Garcia argues that the IJ violated his due process right to present evidence on his own behalf by denying him the opportunity to introduce evidence concerning his brother's citizenship status. "We review constitutional challenges de novo." Lonyem v. U.S. Att'y Gen., 352 F.3d 1338, 1341 (11th Cir. 2003) (per curiam). "[T]he Fifth Amendment entitles aliens to due process of law in

10

deportation proceedings." Reno v. Flores, 507 U.S. 292, 306, 113 S. Ct. 1439, 1449 (1993). To establish a due process claim, aliens must show "the asserted errors caused them substantial prejudice." Lonyem, 352 F.3d at 1341-42.

The regulations provide that an alien "may present evidence and witnesses in his or her own behalf." 8 C.F.R. 1240.11(c)(3)(iii). However, the regulations also provide that "[t]he immigration judge shall receive and consider material and relevant evidence, rule upon objections, and otherwise regulate the course of the hearing." 8 C.F.R. § 1240.1(c) (emphasis added); see also 8 U.S.C. § 1229a(b)(1) (stating that the IJ shall "receive evidence, and interrogate, examine, and cross-examine the alien and any witnesses").

Because an IJ's duty is to regulate the course of such hearings, in part by ensuring the relevance of evidence, the IJ's request that Garcia clarify the relevance to his case of testimony regarding his brother's citizenship did not violate Garcia's due process rights. Moreover, Garcia's attorney was given a chance to argue the relevance of Garcia's testimony, but instead abandoned it and chose to pursue a different line of questioning. Additionally, even if the IJ had erred in not allowing Garcia to testify as to the particulars of his brother's citizenship, Garcia has failed to show how he was prejudiced thereby.

11

### III. CONCLUSION

Garcia petitions for review of the BIA's order affirming the denial of withholding of removal under the INA and the CAT. To the extent Garcia is requesting review of the IJ's and BIA's factual determinations denying him withholding of removal under the INA and the CAT, we lack jurisdiction pursuant to 8 U.S.C. § 1252(a)(2)(C) and the REAL ID Act. We do, however, have jurisdiction to review Garcia's claim that the IJ violated his due process rights during his removal hearing because that claim involves review of a constitutional issue. In reviewing that issue, we find that Garcia's due process rights were not violated by the IJ's request that Garcia explain the relevance of testimony regarding his brother's citizenship. Accordingly, the petition is **DISMISSED in part and DENIED in part**.