[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
December 4, 2008
THOMAS K. KAHN
CLERK

No. 08-11464
Non-Argument Calendar

_____

Agency No. A43-218-522


CONROY GARDNER,

                                                        Petitioner,


versus


U.S. ATTORNEY GENERAL,

                                                        Respondent.



_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(December 4, 2008)


Before BIRCH, HULL and PRYOR, Circuit Judges.

PER CURIAM:

Conroy Gardner, a native and citizen of Jamaica, petitions for review of the denial of his applications for asylum and withholding of removal under the Immigration and Nationality Act and the United Nations Convention Against Torture and Other Cruel, Inhuman and Degrading Treatment or Punishment. INA § 241(b)(3), 8 U.S.C. § 1231(b)(3); 8 C.F.R. § 208.16(c). The Board of Immigration Appeals and the immigration judge ruled that Gardner was ineligible for asylum because he had been convicted of an aggravated felony and was not entitled to deferral of removal because he had not proved a likelihood that he would be tortured if he returned to Jamaica. The Board also rejected Gardner's complaints of the denial of due process by the immigration judge. We deny the motion to dismiss filed by the Attorney General, and we deny Gardner's petition.

## I. BACKGROUND

Gardner entered the United States in March 1992 as a legal permanent resident. Gardner's mother was naturalized in July 1999 after Gardner turned eighteen. Gardner never applied for citizenship.

In June 2007, Gardner received a notice to appear charging him with removal because he had been convicted of an aggravated felony. INA § 237(a)(2)(A)(iii). The second page of the notice stated that Gardner could be "represented in [the removal] proceeding" by counsel of his choice or he could choose from "[a] list of qualified attorneys and organizations who may be available

2

to represent [him] at no cost" that would be "provided with [the] Notice." Gardner did not receive a copy of the list.

In July 2007, because Gardner was incarcerated, the immigration judge conducted Gardner's initial removal proceeding by telephone under the Florida institutional hearing program. The immigration judge inquired if Gardner had an attorney and Gardner responded in the negative. The immigration judge gave Gardner the option to either postpone the hearing to obtain counsel or to represent himself. Gardner responded, "I would like to speak on my own behalf."

Gardner admitted that he had been convicted in April 2007 in a state court of aggravated battery with a deadly weapon. The immigration judge advised Gardner that he could be removed because of his conviction. After finding that Gardner did not qualify for derivative citizenship or adjustment of his status, the immigration judge ordered Gardner removed.

Gardner stated that he feared persecution as a homosexual in Jamaica. The immigration judge advised Gardner that he could apply for withholding of removal, but cautioned that he might be ineligible if his conviction was a "particularly serious crime." The judge also advised Gardner that he could apply for deferral of removal and explained that, to obtain relief under the Convention, Gardner would "have to show that the government of Jamaica would actually

3

torture [him] if [he was] to return to . . . Jamaica." When Gardner stated that he intended to apply for relief, the immigration judge told Gardner that he had

> the right to submit supporting documents in support of [his] . . . claim. In other words, if [he had] articles, newspapers [sic] articles or, or anything else that would show that . . . homosexuals are being persecuted in Jamaica and you want to submit those you . . . should submit those. If you have witnesses that can support your . . . claim, then they should be present at the hearing.

The immigration judge also reminded Gardner of his right to counsel. The judge told Gardner that he had the "right to get an attorney to represent you at the hearing" and advised Gardner to "work on getting an attorney to represent you." The immigration judge twice advised Gardner that his removal hearing would be conducted by video and instructed a corrections officer to give Gardner "Form Q . . . and U." Gardner completed an application to register as a permanent resident or adjust status. Gardner sought relief based on his "fear of death upon return to Jamaica because of life style homosexuality."

The immigration judge conducted Gardner's removal hearing by telephone. The judge advised Gardner that he had submitted the incorrect application and allowed Gardner to complete an application for asylum and withholding of removal. In this application, Gardner sought relief under the Convention and alleged that he, his family, and his friends had been mistreated because "many Jamaican [sic] hate homosexuals for no cause." Gardner explained that he feared

4

"be[]ing killed or harm[ed]" by "the people of the c[o]untry, police . . . because as a[] Jamaican [he] under[went] many hate threats . . . in the pas[t] from Jamaicans and [he had] read article and facts about the killings from the police and people in the c[o]untry" about which he had "evidence and prove [sic]." Gardner admitted in the application that he had been convicted of domestic violence with a deadly weapon and received probation, which was later revoked because he was "defending" himself and received a sentence of eighteen months of imprisonment. Gardner submitted with his application a newspaper article that detailed the murder of a leading gay rights activist in Jamaica; described verbal and physical violence against homosexuals as "commonplace"; and recounted witness reports that police had joined a mob that chopped, stabbed, and stoned a man believed to be homosexual.

The immigration judge had before him several other documents, including the 2006 Country Report for Jamaica and the record of Gardner's conviction for aggravated battery. The Country Report stated that the Jamaican government generally respected human rights, but that a homosexual organization "continued to report" incidents against homosexuals that included "arbitrary detention" by police, harassment by the police and prison staff, and attacks by citizens. The report also stated that, although police had made few arrests for incidents by Jamaican citizens, an individual had been sentenced to imprisonment for life for

5

killing a prominent homosexual rights activist. The report also stated that persons identified as homosexuals by prison wardens "were held in a separate facility for their protection." Included in the documents of Gardner's conviction was a probable cause affidavit that stated that Gardner had become angry and attacked Alfred Nelson with several knives when Nelson attempted to leave their house; Nelson received several defensive wounds on his left hand; Nelson told police that "he was in fear of his life"; and police found broken vases and overturned furniture in the house.

At the removal hearing, Gardner offered excuses for his convictions and argument to support his application. Gardner testified that he had cut Nelson by accident after a chandelier fell on Gardner's head and that he later violated his probation when he was blamed for causing a mob to attack him. Gardner also admitted that he had pleaded guilty to battery and had been arrested for prostitution. Gardner stated that he feared, based on "numerous of articles about things happening in Jamaica" and conversations with his "own family members," that he would be killed or persecuted for his homosexuality. Gardner alleged that people would know he was a homosexual by the way he walked.

The immigration judge denied the application. The judge ruled that Gardner was statutorily ineligible for asylum and withholding of removal because of his conviction for aggravated felony, which the judge "consider[ed] . . . a particularly

6

serious crime." The judge found that Gardner was eligible for deferral of removal, but that he had not established a likelihood that he would be tortured by the Jamaican government. The judge found that Gardner had a legitimate "fear of being discriminated against and possibly harmed . . . by other citizens of Jamaica . . . because of his sexual orientation[,] [b]ut [found that] there [was] no hard evidence to suggest that the government of Jamaica condone[d] . . . [or] turn[ed] a blind eye" or "participat[ed]" in "such conduct."

The Board dismissed Gardner's appeal. The Board "affirm[ed]" the findings of the immigration judge that Gardner's conviction was an "aggravated felony/crime of violence . . . under sections 237(a)(2)(A)(iii) and 101(a)(43)(F) of the Immigration and Nationality Act" and a "particularly serious crime." The Board rejected Gardner's argument that the conviction was a misdemeanor as "incorrect[] as a matter of the clear terms of the Florida statute at issue and . . . the 18-month sentence imposed in his case," and found Gardner "ineligible for asylum." The Board found that Gardner was ineligible for deferral of removal under the Convention. Even though the record contained evidence of discrimination and societal violence, "the record lack[ed] evidence to show that it was more likely than not that [Gardner] would be tortured either by government authorities themselves or with their acquiescence."

7

The Board rejected Gardner's arguments that the immigration judge violated Gardner's right to due process. Although Gardner received the incorrect application form, Gardner completed the correct form at the hearing and "through questioning by the Immigration Judge, the nature of [Gardner's] claim was set out on the record." The Board found that, despite evidence that Gardner did not make a "knowing waiver of representation" or receive a "list of free legal service providers[,]" the record did not "indicate any procedural error that meaningfully prevented [him] from applying for relief" or affected his ability "to prove the required elements of a Convention Against Torture claim."

After Gardner filed a petition for review in this Court, we issued to the parties three jurisdictional questions: (1) whether the Immigration and Nationality Act "limits [our] jurisdiction over the petition"; (2) "whether the specific constitutional challenges or questions of law, if any, raised by [Gardner] are reviewable"; and (3) if Gardner sought "judicial relief of the denial of discretionary relief, whether the Act "preclude[d] [our] jurisdiction if the Attorney General or the Secretary of Homeland Security did not, in fact exercise any discretion in denying the requested relief."

## II. STANDARDS OF REVIEW

We review de novo an issue of subject-matter jurisdiction. Amaya-Artunduaga v. U.S. Att'y Gen., 463 F.3d 1247, 1250 (11th Cir. 2006).

8

"We review constitutional challenges de novo." Lonyem v. U.S. Att'y Gen., 352 F.3d 1338, 1341 (11th Cir. 2003). We review the decision of the Board to determine whether it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). "To reverse [those] fact findings, we must find that the record not only supports reversal, but compels it." Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003). We review the legal conclusions of the Board de novo. Id. at 1287 n.6.

## III. DISCUSSION

Both Gardner and the government present two issues for our review. Gardner challenges as arbitrary and capricious the denial of his request for deferral of removal and argues that the immigration judge violated his right to due process. The government responds that we do not have jurisdiction to entertain Gardner's petition and that Gardner failed to exhaust his administrative remedies and abandoned his requests for relief. We address first our subject-matter jurisdiction and then Gardner's arguments.

*A. We Have Subject-Matter Jurisdiction To Entertain Gardner's Petition.*

This Court lacks "jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section 1182(a)(2) or 1227(a)(2)(A)(iii)" of Title 8. INA §

9

242(a)(2)(C); 8 U.S.C. § 1252(a)(2)(C). "Any alien who is convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. § 1227(a)(2)(A)(iii). The jurisdiction of this Court is also limited by section 242(a)(2)(C) of the Immigration and Nationality Act:

> Notwithstanding any other provision of law . . . no court shall have jurisdiction to review – (i) any judgment regarding the granting of relief under [section 240A,] . . . or (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified . . . to be in the discretion of the Attorney General or the Secretary of Homeland Security.

8 U.S.C. § 1252(a)(2)(B).

Despite these limitations, Congress in the REAL ID Act restored our jurisdiction to review constitutional questions and "questions of law" that an alien raises in a petition for review:

> Nothing in [section 1252(a)(2)(C)], or in any other provision of this Act (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section.

REAL ID Act § 106(a)(1)(A)(iii) (codified at 8 U.S.C. § 1252(a)(2)(D)); Balogun v. U.S. Att'y Gen., 425 F.3d 1356, 1359 (11th Cir. 2005). Notwithstanding the jurisdictional bars contained in subsections 242(a)(2)(B) and (C), we retain

10

jurisdiction under subsection 242(a)(2)(D) to review constitutional challenges to a removal order and "questions of law." This Court lacks jurisdiction to review discretionary or factual determinations when subsections 242(a)(2)(B) or (C) apply. Martinez v. U.S. Att'y Gen., 446 F.3d 1219, 1222 (11th Cir. 2006).

We have jurisdiction to entertain Gardner's arguments. Section 242(a)(2)(D) gives this Court jurisdiction to consider Gardner's arguments that the immigration judge violated his constitutional rights, 8 U.S.C. § 1252(a)(2)(D), and erred, as a matter of law, by denying him relief under the Convention. See Jean-Pierre v. U.S. Att'y Gen., 500 F.3d 1315, 1322 (11th Cir. 2007) ("we have jurisdiction to review [a] claim . . . [that] challenges the application of an undisputed fact pattern to a legal standard"). Gardner also has exhausted administrative remedies. Gardner presented the Board the same issues he argues in this petition and he received an adverse ruling from the Board. We deny the motion to dismiss filed by the Attorney General.

*B. The Immigration Judge Did Not Violate Gardner's Right to Due Process.*

Gardner argues that the immigration judge violated his right to due process in three ways. He argues that the immigration judge failed to follow procedural rules, did not confirm that Gardner was aware of his right to appointed counsel, and failed to conduct a hearing to determine whether his conviction for aggravated battery was a particularly serious crime. These arguments fail.

11

Gardner has not established that the immigration judge violated his right to due process. Although aliens are entitled to due process under the Fifth Amendment, Fernandez-Bernal v. U.S. Att'y Gen., 257 F.3d 1304, 1311 (11th Cir. 2001), "[i]n order to establish a due process violation, an alien must show that he or she was deprived of liberty without due process of law and that the asserted error caused him substantial prejudice." Garcia v. U.S. Att'y Gen., 329 F.3d 1217, 1222 (11th Cir. 2003) (citations omitted). For this Court to find substantial prejudice, the alien must establish that, in the absence of the alleged violations, the outcome of the proceeding would have been different. Ibrahim v. INS, 821 F.2d 1547, 1550 (11th Cir. 1987).

Gardner has not established substantial prejudice regarding the denial of his applications for asylum and withholding of removal. Gardner's conviction for an aggravated felony made him ineligible for asylum and withholding of removal. See INA § 208(b)(2)(A)(ii), (b)(2)(B)(i); 8 U.S.C. § 1158(b)(2)(A)(ii), (b)(2)(B)(i); see also Fla. Stat. § 784.045(2) ("[w]hoever commits aggravated battery shall be guilty of a felony of the second degree"). Gardner cannot establish that, but for any denial of due process, the outcome of his removal hearing would have been different.

Gardner also cannot establish prejudice regarding his application for deferral of removal. Although Gardner was given the incorrect application form, the

12

immigration judge advised Gardner of his burden of proof and his right to introduce corroborating evidence. Gardner was later allowed to complete the correct form, explain the reasons that he sought deferral of removal, and introduce evidence to corroborate his argument that homosexuals are discriminated against and face violence in Jamaica. Gardner also was not entitled to appointed counsel. See Dakane v. U.S. Att'y Gen., 399 F.3d 1269, 1273–74 (11th Cir. 2005). Gardner cannot establish that he was prejudiced by the failure of the immigration judge to hold a hearing on Gardner's conviction because his request for deferral of removal was based on his failure to prove that he would be tortured if returned to Jamaica.

*C. Gardner Is Ineligible for Deferral of Removal.*

To be eligible for deferral of removal under the Convention, an alien has the burden to prove that he will, more likely than not, be tortured if removed to his country of origin. 8 C.F.R. § 208.16(c)(2). Torture is confined to those acts inflicting "severe pain and suffering, whether physical or mental" committed at the hands, under the direction, or with the acquiescence of "a public official or other person acting in an official capacity." 8 C.F.R. § 208.18(a)(1). "Acquiescence of a public official requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity." 8 C.F.R. § 208.18(a)(7). "Public officials or other persons acting in an official capacity must be involved,

13

and the treatment must be directed at a person within their custody or physical control." Jean-Pierre, 500 F.3d at 1323 (citing 8 C.F.R. § 208.18(a)(1)); see also 8 C.F.R. § 208.18(a)(6).

The Board did not err in its application of the law regarding deferral of removal. Although Gardner presented evidence that Jamaican citizens discriminate against and even inflict violence on homosexuals, the Board found that Gardner failed to prove that public officials turn a blind eye to those crimes or persecute homosexuals in their custody or control. Under the Convention, Gardner is ineligible for deferral of removal.

## IV. CONCLUSION

Gardner's petition for review is **DENIED**.